## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEL GROSS, Individually and On Behalf of All Others Similarly Situated, | : : : : | **Case No.:** |
| Plaintiff, | : : : | |
| vs. | : : | **JURY DEMANDED** |
| ANDEAVOR, GREGORY J. GOFF, RODNEY F. CHASE, PAUL L. FOSTER, EDWARD G. GALANTE, DAVID LILLEY, MARY PAT MCCARTHY, J.W. NOKES, WILLIAM H. SCHUMANN, III, JEFF A. STEVENS, SUSAN TOMASKY, MICHAEL E. WILEY, PATRICK Y. YANG, MARATHON PETROLEUM CORPORATION, MAHI INC., and MAHI LLC, | : : : : : : : : : : : | |
| Defendants. | : : | |

## COMPLAINT

Plaintiff Mel Gross ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Andeavor ("Andeavor" or the "Company") against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of Andeavor.

2.      On April 29, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Marathon Petroleum Corporation ("MPC"), Andeavor, Mahi Inc., and Mahi LLC (the "Proposed Merger").

3.      In connection with the Proposed Merger, each share of Andeavor common stock issued and outstanding will have the right to receive either 1.87 shares of MPC common stock, which is referred to as the stock consideration, or $152.27 in cash, which is referred to as the cash consideration.  Elections to receive cash consideration and stock consideration are subject to allocation and proration procedures set forth in the Merger Agreement to ensure that the total number of shares of Andeavor common stock converted into the right to receive cash consideration is equal to 22,885,359 shares, which is referred to as the cash election number, and the remaining shares of Andeavor common stock to be converted in the Proposed Merger will be converted into the right to receive stock consideration (the "Merger Consideration").

4.      The consummation of the Proposed Merger is subject to certain closing conditions, including the approval of the stockholders of Andeavor.  The Company expects the Proposed Merger to close in the second half of 2018.

5.      On May 29, 2018, in order to convince Andeavor shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a joint materially incomplete and misleading registration statement, which was filed by MPC on Form S-4 with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Registration Statement, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the

Proposed Merger, thereby rendering certain statements in the Registration Statement incomplete and misleading.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.

## THE PARTIES

10.     Plaintiff is, and has been at all times relevant hereto, a stockholder of Andeavor. *See* attached certification.

11.     **Defendant Andeavor** is a Delaware corporation.

12.     **Defendant Gregory James Goff** ("Goff") is Chairman, President & Chief Executive Officer of the Company.

13.     **Defendant Jeff A. Stevens** ("Stevens") is and has been a director of the Company at all times during the relevant time period.

14.     **Defendant Paul L. Foster** ("Foster") is and has been a director of the Company at all times during the relevant time period.

15.     ***Defendant William H. Schumann*** ("Schumann") is and has been a director of the Company at all times during the relevant time period.

16.     ***Defendant Edward G. Galante*** ("Galante") is and has been a director of the Company at all times during the relevant time period.

17.     ***Defendant Jimmy W. Nokes*** ("Nokes") is and has been a director of the Company at all times during the relevant time period.

18.     ***Defendant Mary Pat McCarthy*** ("McCarthy") is and has been a director of the Company at all times during the relevant time period.

19.     ***Defendant David Lilley*** ("Lilley") is and has been a director of the Company at all times during the relevant time period.

20.     ***Defendant Rodney Frank Chase*** ("Chase") is and has been a director of the Company at all times during the relevant time period.

21.     Defendants Goff, Stevens, Foster, Schumann, Galante, Nokes, McCarthy, Lilley, and Chase are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, along with Andeavor, are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings his claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Andeavor common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of May 3, 2018, there were approximately 151,122,485 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Andeavor or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among inter alia:

(a)     Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(b)     Whether Defendants have disclosed and will disclose all material facts about the Proposed Merger to Andeavor shareholders;

(c)     Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Proposed Merger; and

(d)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the merger complained of herein consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE COMPANY ANNOUNCES THE PROPOSED MERGER

29.     On April 30, 2018, the Company and MPC issued a joint press release announcing the Proposed Merger. The press release stated, in pertinent part:

FINDLAY, Ohio, and SAN ANTONIO, Texas–April 30, 2018–Marathon Petroleum Corp. (NYSE: MPC) and Andeavor (NYSE: ANDV) today announced that they have entered into a definitive merger agreement under which MPC will acquire all of ANDV's outstanding shares, representing a total equity value of $23.3 billion and total enterprise value of $35.6 billion, based on MPC's April 27, 2018, closing price of $81.43. ANDV shareholders will have the option to choose 1.87 shares of MPC stock, or $152.27 in cash subject to a proration mechanism that will result in 15 percent of ANDV's fully diluted shares receiving cash consideration. This represents a premium of 24.4 percent to ANDV's closing price on April 27, 2018. MPC and ANDV shareholders will own approximately 66 percent and 34 percent of the combined company, respectively. The transaction was unanimously approved by the board of directors of both companies and is expected to close in the second half of 2018, subject to regulatory and other customary closing conditions, including approvals from both MPC and ANDV shareholders. The headquarters will be located in Findlay, Ohio, and the combined business will maintain an office in San Antonio, Texas.

"This transaction combines two strong, complementary companies to create a leading U.S. refining, marketing, and midstream company, building a platform that is well-positioned for long-term growth and shareholder value creation," said Gary R. Heminger, MPC chairman and chief executive officer. "Each of our operating segments are strengthened through this transaction, as it geographically diversifies our refining portfolio into attractive markets, increases access to advantaged feedstocks, enhances our midstream footprint in the Permian basin, and creates a nationwide retail and marketing portfolio that will substantially improve efficiencies and enhance our ability to serve customers. "Importantly, we expect this transaction will be meaningfully accretive for shareholders, generating approximately $1 billion of tangible annual run-rate synergies within the first

three years and significantly enhancing our long-term cash flow generation profile,"
said Heminger. "Given the confidence in the robust cash flow expected to be generated by the combined business, our board also authorized an incremental $5 billion of share repurchases. As a combined company, we will continue ou balanced approach to investing in the business and returning cash to our investors, while maintaining our commitment to an investment-grade credit profile."

* * *

At closing, Greg Goff, ANDV chairman and chief executive officer, will join MPC as executive vice chairman. As executive vice chairman and an executive of MPC following closing, Goff will provide leadership and be integrally involved in the strategy for the combined company. Goff, along with three other Andeavor directors, will also join the board of directors of Marathon Petroleum. "With significantly increased scale, a strong platform for our midstream businesses and a leading nationwide retail and marketing distribution portfolio, the combined company presents tremendous value enhancement and growth opportunities for all shareholders," said Goff. "This strategic combination provides our shareholders with a premium for their shares and the opportunity to benefit from substantial future value creation at MPC. As the largest refiner by capacity in the U.S., with a best-in-class operating capability and a strong capital structure, the combined company will be exceptionally well-positioned to deliver on its synergy and earnings targets. We look forward to working together to deliver on the full potential of this powerful combination."

## THE PRECLUSIVE DEAL PROVISIONS

30.     The Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate to deter other suitors from submitting a superior offer for Andeavor.

31.     Pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish MPC with the terms of any competing bid and confidentiality agreement; (iii) a matching rights provision which gives MPC four (4) business days to match any unsolicited superior

acquisition proposal the Board receives; and (iv) a provision that requires the Company to pay MPC a termination fee of $600,000,000 if the Company, among other things, signs an alternative acquisition agreement.

32.     These deal protection provisions substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Andeavor.

33.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Andeavor's shareholders receive all

material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

## INTERESTS OF DEFENDANTS
## TO COMPLETING THE PROPOSED MERGER

34.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Merger.  The following chart demonstrates the potential payouts to the Company's officers and directors as a result of their exchange of shares of Andeavor for the Merger Consideration:

**Golden Parachute Compensation**

| Name | Cash ($) [1] | Equity ($) [2] | Pension/ NQDC ($) [3] | Benefits ($) [4] | Total ($) |
|------|------|--------|-----------|----------|-------|
| Gregory J. Goff | 15,040,002 | 52,284,745 | 0 | 40,419 | 67,365,166 |
| Steven M. Sterin | 5,334,000 | 10,804,008 | 979,952 | 40,419 | 17,158,379 |
| Keith M. Casey | 4,813,300 | 11,285,470 | 1,101,423 | 40,419 | 17,240,612 |
| Kim K.W. Rucker | 4,794,000 | 8,218,273 | 229,000 | 40,419 | 13,281,692 |
| Cynthia J. Warner | 4,302,000 | 7,694,143 | 730,792 | 40,419 | 12,767,354 |

## INTERESTS OF THE FINANCIAL ADVISORS TO THE PROPOSED MERGER

35.     Goldman Sachs has provided certain investment banking services to the Company and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs

has received, and may receive, compensation, including having acted as joint bookrunner with respect to the public offering of Andeavor Logistics, an affiliate of Andeavor, and Tesoro Logistics Finance Corp.'s, an affiliate of Andeavor, 6.125% Senior Notes due 2021 (aggregate principal amount $250 million) and 6.375% Senior Notes due 2024 (aggregate principal amount $450 million) in May 2016; as joint lead arranger with respect to a term loan facility for Western Refining, a subsidiary of Andeavor, (aggregate principal amount $500 million) in June 2016; as Western Refining's financial advisor in connection with its acquisition of Northern Tier Energy LP in June 2016; as joint bookrunner with respect to the public offering of 7,500,000 common units representing limited partner interests in Western Refining Logistics, LP, which is referred to as WNRL, an affiliate of Andeavor, in September 2016; as Andeavor's financial advisor in connection with its acquisition of Western Refining in November 2016; as lead bookrunner with respect to the public offering of Andeavor's 4.750% Senior Notes due 2023 (aggregate principal amount $850 million) and 5.125% Senior Notes due 2026 (aggregate principal amount $750 million) in December 2016; as Andeavor's financial advisor in connection with the merger of Andeavor Logistics and WNRL and the buy-in of Andeavor Logistics's incentive distribution rights announced in August 2017; as joint bookrunner with respect to the public offering of Andeavor Logistics and Tesoro Logistics Finance Corp.'s 3.500% Senior Notes due 2022 (aggregate principal amount $500 million), 4.250% Senior Notes due 2027 (aggregate principal amount $750 million) and 5.200% Senior Notes due 2047 (aggregate principal amount $500 million) in November 2017; as joint bookrunner with respect to the public offering of Andeavor Logistics's 6.875% Series A Fixed-to-Floating Rate Cumulative Redeemable Perpetual Preferred Units (aggregate principal amount $600 million) in November 2017; and as joint bookrunner with respect to Andeavor's public offering of 3.800% Senior Notes due 2028 (aggregate

principal amount $500 million) and 4.500% Senior Notes due 2048 (aggregate principal amount $500 million) in December 2017. During the two-year period ended April 29, 2018, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to Andeavor and/or its affiliates of approximately $64.9 million.

36.     Goldman Sachs also has provided certain investment banking services to MPC and its affiliates from time to time for which the Investment Banking Division of Goldman Sachs has received, and may receive, compensation, including having acted as joint bookrunner with respect to the public offering for MPLX, an affiliate of MPC, of its 3.375% Senior Notes due 2023 (aggregate principal amount $500 million), 4.000% Senior Notes due 2028 (aggregate principal  amount $1.25 billion), 4.500% Senior Notes due 2038 (aggregate principal amount $1.75 billion), 4.700% Senior Notes due 2048 (aggregate principal amount $1.5 billion) and 4.900% Senior Notes due 2058 (aggregate principal amount $500 million) in February 2018. During the two-year period ended April 29, 2018, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to MPC and/or its affiliates of approximately $3.2 million. Goldman Sachs may also in the future provide investment banking services to Andeavor, MPC and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation.

37.     Pursuant to a letter agreement dated April 15, 2018, Andeavor engaged Goldman Sachs to act as its financial advisor in connection with the contemplated merger.  The engagement letter between Andeavor and Goldman Sachs provides for a transaction fee of $45 million, all of which becomes payable at consummation of the merger and is contingent upon consummation of the merger.

## MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

38.     On May 29, 2018, MPC filed the Form S-4 registration statement (reviewed and approved by Andeavor's Board) with the SEC in connection with the Proposed Merger containing background information and the financial analyses prepared by Goldman Sachs for Andeavor and Barclays Capital Inc. for MPC in support of their fairness opinions favoring the Proposed Merger. The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Merger.

39.     Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions.   However, Registration Statement the misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## FINANCIAL PROJECTIONS PREPARED BY ANDEAVOR'S MANAGEMENT

40.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its scrutiny of the use of such projections. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

41.     In order to make the projections included on pages 132-138 of the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

42.     At the very least, the Company must disclose the segment reporting, as well as, line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) net income; (ii) net earnings; (iii) earnings per share; (iv) interest expense; (v) depreciation and amortization; (vi) amortization of intangibles; and (vii) a reconciliation of all non-GAAP to GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading and leaves Andeavor shareholders without the necessary, material information to reach a full-informed decision concerning the Company, the fairness of the merger consideration, and, ultimately, whether to vote in favor of the Proposed Merger.

43.     The Registration Statement provides several projections for non-GAAP metrics, including EBITDA and Unlevered Free Cash Flow, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures for the following: (i) Unaudited Forecasted Financial Information of MPC; (ii) Unaudited Forecasted Financial Information of Andeavor; (iii) MPC Adjusted Unaudited Forecasted Financial Information; and (iv) Andeavor Adjusted and Modified Unaudited Forecasted Financial Information.

44.     Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Andeavor shareholders without the necessary, material information to reach a fully-informed decision concerning the

Company, fairness of the merger consideration, and whether to vote in favor of the Proposed Merger.

45.     Further, Andeavor has previously provided its shareholders with the abovementioned information.

## FINANCIAL PROJECTIONS PREPARED BY MPC'S MANAGEMENT

46.     The Registration Statement provides several projections for non-GAAP metrics, including EBITDA and Unlevered Free Cash Flow, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures for the following: (i) MPC Management Projections of MPC Financial Information; (ii) MPC Management Adjustment of Andeavor Prospective Financial Information; and (iii) MPC Financial Projections of the Combination of MPC and Andeavor.

47.     MPC has previously provided its shareholders with the above-mentioned information.

## GOLDMAN SACHS' ANALYSES AND FAIRNESS OPINION

48.     With respect to Goldman Sachs' Selected Companies Analysis, the Registration Statement fails to disclose: (i) the basis or parameters used, if any, for Goldman Sachs' determination that (a) there only two companies (and not including the additional 3 companies referenced in the Selected Transactions Analysis) selected that were similar for purposes of the analysis and (b) the financial information of the selected companies were similar for purposes of the analysis; (ii) the parameters for determining the market size and product profile for the selected companies; (iii) the inputs and specific information used by Goldman Sachs for each of the Selected Companies Analysis.

49.     With respect to Goldman Sachs' Premia Analysis, the Registration Statement fails to disclose the implied premium for each of the selected transactions.

50.     With respect to Goldman Sachs' Selected Transactions Analysis, the Registration Statement fails to disclose: (i) the reasons or criteria used for each of the selected transactions; and (ii) why the additional companies in this analysis are not included or limited to the companies in the comparable companies' analysis.

51.     With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis— Andeavor Standalone, the Registration Statement fails to disclose: (i) how Goldman Sachs determined the weighted average cost of capital; (ii) the reasons for applying discount rates ranging from 8.5% to 9.5%; and (iii) the reasons for applying perpetuity growth rates ranging from 0% to 1.0%.

52.     With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis— Implied Valuation Uplift, the Registration Statement fails to disclose: (i) how Goldman Sachs determined the weighted average cost of capital; (ii) the reasons for applying discount rates ranging from 8.5% to 9.5%; and (iii) the reasons for applying perpetuity growth rates ranging from 0% to 1.0%.

53.     With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis—Andeavor Standalone, the Registration Statement fails to disclose: (i) the reasons for applying a range of one-year forward EV/EBITDA multiples ranging from 6.5x to 7.5x to estimated EBITDA for Andeavor for 2019 and 2020; and (ii) the reasons for applying an illustrative discount rate of 10%.

54.     With respect to Goldman Sachs' Illustrative Present Value of Future Share Price Analysis—Implied Valuation Uplift, the Registration Statement fails to disclose: (i) the reasons

for applying a range from 6.5x to 7.5x estimated EBITDA for fiscal years 2019 and 2020; and (ii) the reasons for applying an illustrative discount rate of 9.7%.

## BARCLAY'S ANALYSES AND FAIRNESS OPINION

55.     With respect to Barclay's Discounted Cash Flow Analysis of MPC, the Registration Statement fails to disclose how Barclay's determined, and the reasons for using, the following numbers and ranges: (i) discount rates ranging from 8.50% to 10.00%; (ii) the weighted average cost of capital; (iii) estimates of unlevered free cash flow; (iv) perpetuity growth rates of 2.0%; (v) a 24% marginal tax rate assumption; and (vi) a terminal EBITDA multiple reference range of 7.50x to 8.50x.

56.     With respect to Barclay's Selected Companies Analysis, the Registration Statement fails to disclose: (i) the basis or parameters used, if any, for Barclay's determination that (a) the companies selected were similar for purposes of the analysis and (b) the financial information of the selected companies were similar for purposes of the analysis; (ii) the parameters for determining the market size and product profile for the selected companies; (iii) the inputs and specific information used by Barclay's in calculating: (a) Refining C-corp Comparable Company Enterprise Value Multiple of EBITDA Reference Ranges: and (b) Midstream Comparable Company Enterprise Value Multiple of EBITDA Reference Ranges: and (v) the inputs and specific information used by Barclay's in calculating the specific Enterprise Value Multiple of EBITDA for each of the selected companies.

57.     With respect to Barclay's Selected Comparable Transactions Analysis, the Registration Statement fails to disclose: (i) the reasons or criteria used for each of the selected transactions; (ii) the Precedent Transaction Enterprise Value Multiple of EBITDA Reference Ranges one year and two-year forward for each of the selected transactions; and (iii) the

Precedent Transaction Enterprise Value Multiple of EBITDA trailing twelve months: for each of the selected transactions.

58.     With respect to Barclay's Sum of Parts Analysis, the Registration Statement fails to disclose: (i) the reasons or criteria used for each of the selected transactions and companies; (ii) the specific Multiples for each of the comparable companies and transactions used in the referenced ranges for both MPC and Andeavor in connection with the various segments including (a) Refining, (b) Retail/Marketing, and (c) Midstream.

59.     With respect to Barclay's Equity Analyst Target Price Analysis, the Registration Statement fails to disclose which public equity research analysts were reviewed and each of their specific price targets.

60.     With respect to Barclay's Relative Contribution Analysis, the Registration Statement fails to disclose equity, the analyst estimates for Andeavor that were adjusted to reflect the expensing of turnaround capital expenditures.

61.     With respect to Barclay's Premiums Paid Analysis, the Registration Statement fails to disclose the implied premium for each of the 71 selected U.S. corporate transactions since 2010 and the reasons for any parameters used in selecting the 71 transactions.

62.     With respect to the various analysis, the omitted information and key inputs are material to Andeavor shareholders, and their omission renders the summary of the financial advisors' fairness opinions materially incomplete and misleading.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a)
### of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

63.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.     Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

66.     Defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by Defendants.  The Registration Statement misrepresented and/or omitted material facts as described above.  Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to

vote on the Proposed Merger.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

68.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

69.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the putative Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

70.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Andeavor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Andeavor and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were, thus, directly involved in the making of this document.

74.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Merger.

75.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76.     Plaintiff and the putative Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the putative Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)     Declaring that the Registration Statement is materially false or misleading;

(C)     Enjoining, preliminarily and permanently, the Proposed Merger;

(D)     In the event that the Proposed Merger is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the putative Class rescissory damages;

(E)     Directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 28, 2018

**PAZUNIAK LAW OFFICE, LLC**

By: */s/ George Pazuniak*
George Pazuniak (#478)
1201 Orange Street
7th Floor, Suite 7114
Wilmington, DE 19801-1186
Tel.: (302) 478-4230
Email: gp@del-iplaw.com

*GAINEY McKENNA & EGLESTON*
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY  10016
Telephone: 212-983-1300
Facsimile: 212-983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff Mel Gross*

20